THE KROGER CO. v. MRS. W. R. BURLESON

4677                                         432 S.W. 2d 847

Opinion Delivered October 14, 1968
[Rehearing denied November 18, 1968.]

372

*Keith, Clegg & Eckert* for appellant.

*McKay, Anderson & Crumpler* for appellee.

CONLEY BYRD, Justice. Appellant, The Kroger Company, conducted a promotional game called "Double Sweepstakes Bingo", whereby customers could win prizes ranging from trading stamps to $1,000 cash. The game was played with a card and discs distributed by the Kroger stores to their customers. Kroger's Exhibit #3 is reproduced below to show the card and the discs placed thereon. Concealed discs, such as Burleson's Exhibit #1-A, below, were given to customers each time they visited the store.

Exhibit #3 Exhibit #1-A

The game rules are on the back of the cards. Rules 4 and 10 provide:

> "4. When you have a row of five squares covered vertically, horizontally or diagonally on any one of the four games on each card, you have won the cash prize indicated at the top of that game. Free squares are the same as covered numbers. Take winning card to our store and have manager verify it. He will then award you the CASH PRIZE. Only one cash prize per game."

> "10. CAUTION: Cards and disc tickets VOID if altered or defaced. Game is VOID where prohibited or restricted by law."

Appellee, Mrs. W. R. Burleson filled the $1,000 game card allegedly by acquiring the disc "G-80" in the Magnolia Kroger Store. Mrs. Burleson claims that when she presented the card and discs to the store manager, he told her "he would send it in and then they'd send me my money". At that time she signed a form entitled "Double Sweepstakes Bingo $1,000, $100, $25 . . . . . Submission Agreement and Publicity Release Form."

Mrs. Burleson maintains that she did not leave the store after getting the "G-80". Kroger subsequently notified Mrs. Burleson that she was not a winner because the "G-80" disc had been altered. When Mrs. Burleson's counsel wrote for the return of her bingo card and discs, Kroger responded:

> "Dear Mr. Crumpler:
>
> An examination of the key bingo disc submitted by your client makes it obvious that the disc has been tampered with. Aside from any possible fraud implications, our rules state quite clearly that discs which have been altered or defaced are void. Your client clearly does not have a winning disc or card.

For your own information, I might add that your client initialed the disc in question before submitting it to us. The tampering took place before this time. You might also be interested to know that the invisible ink coding which is placed on all winning discs was not on your client's disc.

This is not a case of simple error. It involves a deliberate effort on the part of someone to obtain a prize to which they are not entitled. I understand, of course, that this may have occurred before the disc reached your client for we know these discs are widely traded or sold.

In view of the facts, we do not intend to consider the material submitted by your client as valid."

At trial the store manager positively identified Kroger's Exhibit #3 as the card and discs given to him by Mrs. Burleson because of his initials on the back of the card and the alteration of the "G-80". In a previous deposition he had stated only that it would be his opinion that this was the card submitted by Mrs. Burleson, but that as far as the marks on the card, he was not sure, but they looked like his initials; he would not say they were and he did not remember initialing the discs. He admits he had been instructed by the company to mark the cards and discs for identification so that the person sending them in could be sure it was their card and discs that were sent in, but he failed to have Mrs. Burleson initial her card and disc. The ''G-83'' disc on Exhibit #3 was there when submitted, but there was no explanation for its absence. He was not sure why he did not staple the "G-83" disc as he had done the other two. The "G-80" was only clipped to prevent mutilation. ·

The store manager says that it would be a matter of opinion whether Mrs. Burleson thought that he in-

dicated she was a winner. It was his duty to take the card without causing any problems from her and send it to Little Rock.

Byron Crain, Kroger's Advertising Manager for the 36 stores in Arkansas and two in Texarkana, Texas, testified that Kroger used the games so that people would respond to the opportunity to win by shopping at Kroger stores. The cards and discs were designed for 139,000 winners, but only five $1,000 winners. The $1,000 winners were handled individually by him through the use of ''control'' numbers or discs — one of which was a "G-80" disc. The stores receiving the control discs were in Pine Bluff, Little Rock, North Little Rock and Texarkana. A disc numbered "G-80" was not sent to Magnolia.

Mr. Crain then demonstrated with ultra violet light that the ''G-80'' disc on Kroger's Exhibit No. 3 was not one distributed by Kroger, i.e., it was not coded properly. He speculated that two discs may have been put together by using the eight in 86 and the zero in 40. However the actual decision to deny the verity of the disc was made on the basis of an alteration under rule #10 of the contest.

On cross examination Crain admitted that Kroger did not mention in its advertising that there could only be five $1,000 winners in Arkansas, and that it continued to advertise $1,000 winners in Magnolia even though no $1,000 control numbers had been sent to that store.

Another Kroger employeé testified that Mrs. Burleson handed him a bingo card with "G-80" on the manager's day off, Thursday, December 15, before she talked with the store manager on December 19th. He says that he told her to present the card to the manager when he got back. He testified that Mrs. Burleson ex-

plained that the "G-80" disc had been in her wrecked truck.

Mrs. Burleson's complaint alleged fraud and sought damages not only for the $1,000 cash prize, but also for the expense of the trips made to shop with Kroger. From a jury verdict of $1,000, Kroger appeals urging the following points:

I. There was no substantial evidence to support a verdict of fraud.

II. There was no substantial evidence that appellee presented a valid "G-80".

III. The court erred in refusing to declare a mistrial when the plaintiff suffered two seizures in the presence of the jury.

IV. The court erred in refusing to declare a mistrial based upon the misconduct of a juror during the trial.

V. The court erred in giving instruction No. 10, because there was no evidence of a misrepresentation by Kroger or damages sustained by Mrs. Burleson.

Points I and II, Whether any fraud was shown here depends upon whether Mrs. Burleson presented a valid disc "G-80". Of course, if we could be sure that the "G-80" on Kroger's Exhibit #3 was the disc with which Mrs. Burleson claims to have bingoed, we could easily find no fraud on Kroger's part.

The record when viewed in the light most favorable to the jury's verdict shows that Mrs. Burleson obtained a "G-80" disc from the Kroger Store in Magnolia; that she presented her bingo card to the manager as required by rule #4 above; and that the manager stated

that he would send the card in and she would then get her money. After the card was turned over to the Manager, Mrs. Burleson was notified that she was not a winner because the disc "G-80" had been altered. When her counsel requested return of the card, Kroger advised him that the disc had been altered and that Mrs. Burleson's initials were on the disc to verify that it was the disc presented by her to the manager, i.e., showing that it was altered at the time of receipt by the manager. When Exhibit #3 was presented to the manager during a pretrial deposition, he was unable to definitely identify either the card or the disc as those given him by Mrs. Burleson, but by the time of trial he was positive of the identification. Admittedly, neither the card nor the disc had been initialed by Mrs. Burleson.

The jury also had before it evidence showing that Kroger did not comply with the Bingo Game Rule #4 when the amount exceeded $5.00, but actually instructed store managers that when a $25, $100 or $1,000 cash winner was claimed. they were to get possession of the cards and discs and send them to the advertising manager for verification and payment.

Added to the above testimony is the undenied fact that Kroger continued to advertise $1,000 cash prizes throughout the thirty-eight store area in which the game was being promoted even though it claimed there were only five possible $1,000 winners and that it knew the store in Magnolia had no $1,000 winner.

Under the circumstances, we are unwilling to say that there was no evidence from which the jury could find fraud on the part of Kroger or that there was no evidence to show that Mrs. Burleson did not receive a valid disc "G-80".

Point III. We can find no abuse of the trial court's discretion in refusing to grant a mistrial when Mrs. Burleson suffered two seizures during the trial.

Ordinarily a cautionary instruction is sufficient to remove any prejudice arising from sympathy.

Point IV.  Kroger's complaint about the comment of the juror arose during the cross-examination of Mr. Byron Crain.  The record with respect thereto shows the following:

> Q.  Mr. Crain, you have testified that the only reason that Mrs. Burleson was not awarded a $1,000 prize was because the disc was not altered.

Mr. Eckert

> That it was altered.

Mr. Crumpler

> That it was altered.  Now with that in mind then, the questions that Mr. Eckert asked Mrs. Burleson about her relationship to one of your employees, that hasn't got anything to do with this?

> A.  No, sir.

> Q.  The only grounds that you all are kicking about is this ticket?  This one G-80?

Juror

> It's the amount, too, the way I get it.

No objection was made at the time to the juror's remark and no request was made for cautionary instructions.  This is certainly not the conduct condemned in *St. Louis-San Francisco Ry. Co. v. Oxford*, 174 Ark. 966, 298 S.W. 207 (1967).  We feel that the record here shows the juror's remark was prompted by evidence heard in open court and we cannot see that the trial court erred in refusing to grant a mistrial.

Point V.  We find no merit in appellant's contention that there was no evidence of a misrepresentation by Kroger or of damages sustained by Mrs. Burleson. The record shows that Mrs. Burleson did respond to the advertised opportunity to play the game by driving some 20 miles to shop with Kroger and that in accordance with Rule #4 of the game she submitted her winning bingo card to the store manager at which time she understood that she would be paid.  We hold that the evidence was sufficient to sustain the $1,000 award of the jury.

Affirmed.

Brown, J., dissents.